UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLA J. IKELER,

        Plaintiff,                         CIVIL ACTION NO. 06-13592

       v.                                 DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be granted, plaintiff's motion be denied, and the decision denying disability benefits be affirmed.

**II. Background**

      Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging that she has no physical limitations, but that she is disabled due to her mental condition. Plaintiff states that her onset date is March 14, 2002. (Tr. 48-50) Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 20) She is a high school graduate and has an Associates

Degree from Western Michigan University.  Her past relevant work includes jobs as a theater usher, pool guard, sales clerk, and bakery worker.  (Tr. 48, 273-278)

Following the initial denial of her application, plaintiff requested a hearing before an administrative law judge (ALJ).  (Tr. 35-40)  On April 21, 2006, the ALJ issued a written decision denying plaintiff's application.  (Tr. 11-21)  The ALJ determined that plaintiff suffered from adjustment disorder with depressed and anxious mood, general anxiety disorder, headaches, and meningitis, and that her impairments were "severe" within the meaning of 20 C.F.R. § 404.1520(c), but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 16-19)  The ALJ also determined that plaintiff could not perform her past relevant work but retained the ability to perform, without physical limitations, simple job assignments with routine production and stress, and only occasional contact with the public, supervisors and co-workers.  (Tr. 19)  The ALJ further determined that there were a significant number of jobs in the national economy that plaintiff could perform.  (Tr. 20-21)  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  (Tr. 21)

Plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 9-10)  The Council denied the request on June 26, 2006.  (Tr. 5-7)  The ALJ's decision thus became the final determination of the Commissioner.  On August 11, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff contends that the ALJ erred in relying on the testimony of a vocational expert (VE) in determining that she was not disabled because the hypothetical posed to the ALJ was inaccurate.  The Commissioner

contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further, an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed

>impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

>Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### C. Evaluation of Hypothetical

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

Court decisions which have considered whether the hypothetical posed by the ALJ adequately reflected the functional limitations imposed by the claimant's mental impairment provide guidance in this case. Sixth Circuit case law holds that a hypothetical question must accurately reflect an individual's limitations. See, Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). In Bowen v. Commissioner of Social Security, 478 F.3d 742 (6th Cir. 2007) the court held that the hypothetical did not take into account the degree of the mental impairment set forth in the medical records because it did not acknowledge the opinion of the treating physician. In Smith v Halter, 307 F.3d 377, 378-379 (6th Cir. 2001), the Sixth Circuit

rejected, however, any talismanic language that the hypothetical must include, and held that a hypothetical limiting the claimant to routine and low stress jobs without high quotas was sufficient where the claimant was found to have "often" suffered deficiencies in concentration, persistence, or pace. The Sixth Circuit found that the hypothetical was sufficient because it went beyond the simple frequency assessment and was based on the testimony of four physicians characterizing claimant's concentration problems as minimal or negligible. Smith, supra, 307 F.3d 379.

District courts have also looked frequently at this issue. Where the ALJ took into account the plaintiff's depression by including limitations within the hypothetical and limiting the possible jobs to simple, unskilled, and routine work, the hypothetical has been held to be sufficient. Lyons v. Commissioner of Social Security, 351 F.Supp.2d 659, 662 (E.D. Mich. 2004). In Bielat v. Commissioner of Social Sec., 267 F.Supp.2d 698 (E.D. Mich. 2003), the district court determined that the hypothetical posed by the ALJ, which included a limitation to unskilled, low stress jobs, did not fairly incorporate the ALJ's determination that the claimant had a markedly limited ability to concentrate or persist at a task until timely completion. The district court noted that even if the terms "unskilled" and "low stress" reflected an inability to concentrate, they did not sufficiently describe someone who often displayed deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. Id. at 702. In Edwards v. Barnhart, 383 F.Supp.2d 920 (E.D. Mich. 2005), the ALJ determined that plaintiff had a "moderate limitation in her ability to concentrate, persist, and keep pace," and included in the hypothetical he posed to the VE a restriction to "jobs entailing no more than

simple, routine, unskilled work." The court determined that the restrictions utilized by the ALJ did not adequately convey to the VE plaintiff's deficiencies in the area of concentration, persistence, or pace. The court remanded the matter to the Commissioner, finding that plaintiff's back pain resulted in a moderate limitation in his ability to concentrate, persist, and keep pace, and that the ALJ's hypothetical did not incorporate specific references to job-related restrictions. Id. at 698. In Bohn-Morton v. Commissioner of Social Security, 389 F.Supp.2d 804, 806-807 (E.D. Mich. 2005), while the ALJ checked the "often" box on the PRTF, his more specific and detailed assessment of the plaintiff's mental limitations noted a dearth of objective medical findings or treatment records that would support a finding of a major impairment. Consequently, the court found that the set of restrictions need not have been especially extensive or detailed in order to adequately reflect the plaintiff's non-exertional limitations, and the ALJ reasonably could have determined that a limitation to "simple and rote" job tasks would be sufficient to address the plaintiff's moderate and occasional deficiencies in concentration, persistence, or pace.

### IV. Analysis

Here, the ALJ denied plaintiff's application at step five. The ALJ found that plaintiff had mental impairments that would limit her performance and ALJ posed the following hypothetical question to the vocational expert (VE) Elizabeth Pasikowski:

> Taking claimant's age, education and work experience into account assume that we have an individual with no exertion[al] limitations of lifting established, we oppose [sic, impose?] limitations of jobs that would provide for routine production and stress, simple job assignments, occasional contact with supervision and if we put this individual at the unskilled level could such a person be expected to perform claimant's past work?

(Tr. 298)

The VE responded negatively and explained that all of plaintiff's past work required contact with the public.  Id.

Later, the ALJ asked, "Is there any other work that such an individual could perform?" (Tr. 298)  In response thereto, the VE stated that a person with plaintiff's vocational background and functional limitations, as determined by the ALJ, could do unskilled light work assembly jobs (8,200 jobs state-wide), machine operator (6,000), sorter (3,000), packager (2,000).  (Tr. 298)  In addition, the VE identified additional sedentary jobs (4,000 assembly jobs; 1,800 surveillance monitor jobs; and 2,000 sorter jobs).  Based on the testimony of the VE, the ALJ determined that there were a significant number of jobs in the national economy that plaintiff was capable of performing and, therefore, that she was not "disabled" within the meaning of the Social Security Act.

Plaintiff claims that the ALJ posed an inaccurate hypothetical to the VE and, therefore, that his reliance on the VE's testimony constitutes reversible error.[1]  Rather, she claims that the ALJ failed to include in the hypothetical restrictions sufficient to accommodate her mental impairment, that is essentially the "B" criteria as listed by Dr. Joseph, the physician who prepared the Psychiatric Review Technique.  She contends that her moderate difficulties maintaining social functioning, moderate limitations with respect to completion of a normal workweek, etc. (those factors found by Dr. Joseph) prevent her from working.  (Tr. 299-300)  As

---

[1] Plaintiff has no quarrel with the absence of any physical restrictions included in the hypothetical.  Thus, she has waived any such claim in that regard.  See, Young v. Secretary of HHS, 925 F.2d 146, 149 (6th Cir. 1990).  Plaintiff's only claim here is a mental impairment.

-8-

noted by the government, the psychiatric review technique requires adjudicators to assess an individual's limitations and restrictions from a mental impairment in categories identified in Paragraph B and Paragraph C of Listing 12.00.  This is used to rate the severity of the mental impairment at step 2 and 3 of the sequential evaluation process, not at step 4 or 5.  The latter steps require a more detailed analysis by itemizing various functions contained in the broad categories of the B and C criteria.  See, Social Security Ruling (SSR) 96-8p, 20 CFR part 404 Subpart P, Appendix 1, §12.00I, 20 CFR §404.1520a.

     Plaintiff contends that the limitation to unskilled and simple job assignments that provide routine production and stress was insufficient to account for her deficiencies.  The question is whether the ALJ has formed a hypothetical that accurately conveys to the VE the extent of the claimant's impairment.  Varley, supra, 820 F.2d 777.  Each case must be decided on its own facts – there is no "one size fits all" approach to assessing a claimant's mental impairment.  A finding by an ALJ that a claimant is mildly, moderately, or markedly impaired in the area of concentration, persistence, or pace does not mandate that certain limitations automatically be included in a hypothetical.  The area of concentration, persistence, or pace, as used in a PRTF, encompasses a range of functional considerations, as indicated in 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C)(3), which provides, in part, the following:

> You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks.  Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion.  However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an

>unreasonable number and length of rest periods, or without undue interruptions or distractions.

Thus, an ALJ's finding that a claimant has moderate deficiencies in the area of concentration, persistence, or pace, standing alone, provides little information about the nature of the claimant's deficiency. In determining whether a hypothetical accurately depicts a claimant's mental impairment, the reviewing court must look to the record as a whole.[2]

In this case, plaintiff was hospitalized for her mental status in December 2002, and the police had to come to her house to take her to the hospital. Since then she has been seeing Dr. Lorea and is taking medication. (Tr. 280-282) She has not been hospitalized since 2002. (Tr. 283) She takes sleeping medication and often sleeps for ten or more hours a night. (Tr. 285) She often cries because she is sad. (Tr. 284-286) She is forgetful and does not finish things she starts. (Tr. 285-287) To pass the time of day, she does her housework and reads books. She can do laundry while she reads books. (Tr. 289) Plaintiff's medical records show recurrent depression, treatment with drugs such as Prozac, and some suicidal ideation. Her depression has been linked to her marital situation (Tr. 131-133) and menopausal symptoms (Tr. 196). Dr.

---

[2] The court has considered the record as a whole because, as an initial matter, the court notes that the ALJ did not discuss in detail plaintiff's deficiency of concentration, persistence, or pace. See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); see also Bailey v. Commissioner of Social Security, 1999 WL 96920 at **4 (6th Cir. 1999))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). The ALJ did not make findings regarding the nature of plaintiff's impairment and merely offered the conclusory statement that plaintiff "has normal physical examinations and only mild to moderate limitations in her activities of daily living, social functioning, and concentration, persistence and pace." (Tr. 18)

Joseph, the medical consultant, opined that plaintiff could sustain sufficient concentration to perform simple, repetitive tasks on a regular and continuing basis. (Tr. 133) The ALJ noted that plaintiff had not experienced any episodes of decompensation in a work-like setting. In order to accommodate plaintiff's depressive symptoms in the hypothetical he posed to the VE, the ALJ limited plaintiff to performing unskilled work and job assignments that provide routine production and stress. (Tr. 298) This is consistent with the medical records and the assessment of Dr. Joseph and the other mental examiners.

Plaintiff's medical records show that in 2002 plaintiff's headaches were found to be under control with medication according to her primary care physician Dr. Leonard Bayer. (Tr. 186-209) She saw a social worker in May 2003 and reported that her primary stressor was her marriage. (Tr. 212-214) In September, 2003, psychologist Dr. Patricia Madej assessed plaintiff's GAF at 65-70, indicating mild symptoms but generally functioning pretty well. (Tr. 225-229) Plaintiff took care of all household chores, enjoyed reading, and was in good contact with reality. Although she had low self-esteem, and suffered from personality disorder and generalized anxiety, she had only occasional depression by July 2004 and was getting along with her husband. Her depression recurred later in the fall of 2004, but in January 2005, she was "coping well" on Celexa and crying less. (Tr. 247-250) She reported that she just stayed home all day and did her household chores; she was not open to therapy. (Tr. 247)

As the cases indicate, the ALJ must include in the hypothetical restrictions consistent with the claimant's limitations as established by the record. Because there is no "one-size fits all" approach to forming a hypothetical, the court has carefully considered the hypothetical in the context of the record as a whole. Unlike the cases discussed above, the ALJ in this case did not

expressly find that plaintiff had a moderate limitation in concentration, persistence or pace. Instead, the ALJ found that plaintiff has mild to moderate limitations in concentration, persistence and pace, which means that plaintiff is less limited than the claimants in the other cases and a less restrictive hypothetical may be appropriate. Furthermore, plaintiff's relies solely on the Mental Residual Functional Capacity Assessment done by Dr. Joseph in which Dr. Joseph found that plaintiff was moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 131-133) Notably, however, Dr. Joseph specifically found that plaintiff "could sustain sufficient concentration persistence pace to perform simple repetitive tasks on a regular and continuing basis." (Tr. 133) None of the medication reviews in the Administrative Record support a more restrictive hypothetical either because they all merely state that plaintiff is responding well to treatment and stable. (Tr. 247-259) The ALJ also found that plaintiff's testimony regarding the intensity, duration, and limiting effect of her symptoms was not credible. (Tr. 20) The restriction to unskilled and simple job assignments that provide routine production and stress fully and accurately incorporated plaintiff's mental limitations and the VE testified that a person with such limitations is capable of performing a significant number of jobs in the national economy. Such testimony is sufficient to support the ALJ's finding that plaintiff is not disabled. The court, upon a review of the record as a whole, is satisfied that the restriction to unskilled and simple job assignments that provide routine production and stress is sufficient to accommodate plaintiff's impairment in the area of concentration, persistence, or pace.

**V.  Conclusion**

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be denied, that the Commissioner's motion for summary judgment be granted, and that the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated: May 3, 2007

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on May 3, 2007.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Virginia M. Morgan